GRAVES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24130. Promulgated June 29, 1951.

*William Saunders Henley, Esq.*, for the petitioner.
*Stanley B. Anderson, Esq.*, for the respondent.

1568

### OPINION.

Harron, *Judge:* The only issue for decision is whether respondent properly determined that the amount of $90,000 covering notes paid in for stock did not constitute invested capital under section 718, or a capital addition under section 713 in computing petitioner's excess profits credit. The applicable sections of the Code are set out in the margin.[2]

Petitioner computed its excess profits credit by using the invested capital method and reported its credit to be $7,408.51. Respondent determined that the amount of $90,000 covering notes paid in for stock issued did not constitute invested capital and recomputed petitioner's credit to be $616.59.[3] Section 712 (a) provides that the excess profits credit shall be computed under the income method or the invested capital method, whichever results in the lesser tax. Therefore, respondent then computed petitioner's excess profits credit under the income method and found it to be $1,047.74. In this computation respondent refused to include the $90,000 in notes as a capital addition.[3] Petitioner alleges that the $90,000 in notes constituted an investment under sections 718 and 713 and that the respondent erred in excluding that amount from invested capital. Respondent denies petitioner's allegation.

We hold that the respondent properly excluded the $90,000 in notes from invested capital under section 718 and from capital additions under section 713 in computing petitioner's excess profits credit.

---

[2] SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, * * *

 (1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

 (2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. * * *

SEC. 713. EXCESS PROFITS CREDIT—BASED ON INCOME.

* * * * * * *

(g) ADJUSTMENTS IN EXCESS PROFITS CREDIT ON ACCOUNT OF CAPITAL CHANGES.—For the purposes of this section—

 (1) The net capital addition for the taxable year shall be the excess, divided by the number of days in the taxable year, of the aggregate of the daily capital addition for each day of the taxable year over the aggregate of the daily capital reduction for each day of the taxable year.

* * * * * * *

 (3) The daily capital addition for any day of the taxable year shall be the aggregate of the amounts of money and property paid in for stock, or as paid-in surplus, or as a contribution to capital, after the beginning of the taxpayer's first taxable year under this subchapter and prior to such day. In determining the amount of any property paid in, such property shall be included in an amount determined in the manner provided in section 718 (a) (2). * * *

[3] Other adjustments were also made.

We are dealing with the excess profits tax. In computing the adjusted excess profits net income, the law permits a credit, section 710 (b) (2), to be deducted from the excess profits net income. This credit can be computed on an invested capital basis, section 714,[4] or on an income basis, section 713.[5] The purpose of this credit is "to establish a measure by which the amount of profits which were 'excess' could be judged." *West Construction Co.*, 7 T. C. 974, 978 (1946). In fulfilling this purpose, before capital can be considered in computing the excess profits credit, it is required that the capital actually be invested as part of the working capital; that the capital be utilized for the earning of profits; and that the capital be subject to the risk of the business. *Hart-Bartlett-Sturtevant Grain Co.* v. *Commissioner* (C. A. 8, 1950), 182 F. 2d 153, affirming 12 T. C. 760 (1949). In short, the capital must actually be "invested" in the business.

The evidence shows that the notes were given to petitioner for contingent use and that they were canceled when it was seen that they would not be needed, which was after the excess profits tax legislation had been repealed. Mr. Alex Wilson, one of the chief stockholders in the Wilson Investment Company, testified as follows:

> Graves, Incorporated, had Wilson Investment Company demand notes for certain dollars and the Wilson Finance Company paid them two per cent for not cashing those notes and taking the cash at that time, unless it was necessary in the business.

In addition, not even partial payments were made on the notes of the two Mrs. Graves, although they were due and payable January 1, 1944. Yet, at this time, Margaret W. Graves was liquidating assets in order to purchase Wilson Investment Company stock for cash.

Petitioner has failed to show that any of the companies with which it contracted required petitioner to increase its capital in order to secure business, or that by obtaining the notes it bettered its credit position. In fact, petitioner has made no showing that the $90,000 in notes was of the slightest aid in earning the increased profits for 1943. The notes merely represented a promise to increase petitioner's

---

[4] SEC. 714. EXCESS PROFITS CREDIT—BASED ON INVESTED CAPITAL.

The excess profits credit, for any taxable year, computed under this section, shall be the amount shown in the following table:

 If the invested capital for the taxable
 year, determined under section 715 is: The credit shall be:
 Not over $5,000,000 8% of the invested capital.
 * * * *

[5] SEC. 713. EXCESS PROFITS CREDIT—BASED ON INCOME.

(a) AMOUNT OF EXCESS PROFITS CREDIT.—The excess profits credit for any taxable year, computed under this section, shall be—

 (1) DOMESTIC CORPORATIONS.—In the case of a domestic corporation—

 (A) 95 per centum of the average base period net income.

 (B) Plus 8 per centum of the net capital addition as defined in subsection (g) * * *

working capital if needed while apparently the funds of the Wilson and Graves family groups were used elsewhere.

We conclude that the notes were never invested in petitioner's business and were not utilized in the earning of its increased profits. Therefore, the amount of $90,000 cannot be considered in determining petitioner's "excess" profit. *West Construction Co., supra.*[6]

Respondent's determination is sustained.

*Decision will be entered under Rule 50.*

---

[6] Cf. *Crescent Panel Co.*, 12 B. T. A. 561 (1928) and *Diamond Red Paint Co.*, 3 B. T. A. 688 (1926), interpreting the 1918 Act which specifically provided that notes paid in for stock issued were includible in invested capital. Revenue Act of 1918, sections 325 (a), 326 (a) (2), 40 Stat. 1091, 1092.